IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHAWN ASHLEY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL NO. |
| | § | SA-17-CV-00076-OLG |
| CITY OF SAN ANTONIO AND FIRE | § | |
| CHIEF CHARLES N. HOOD, IN HIS | § | |
| OFFICIAL CAPACITY AS FIRE | § | |
| CHIEF SAN ANTONIO FIRE | § | |
| DEPARTMENT, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant the City of San Antonio and Charles Hood's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [#50]. Also before the Court is Plaintiff's Motion for Leave to File Surreply to Defendant Reply [#63]. In issuing this report and recommendation, the undersigned has also reviewed the following responses and replies to the pending motions and their related exhibits: Plaintiff's Opposition for Defendant's Motion for Summary Judgment [#59], Defendant the City of San Antonio and Charles Hood's Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment [#61], Defendant the City of San Antonio and Charles Hood's Objections to Plaintiff's Motion for Summary Judgment Response Evidence [#62], Defendant the City of San Antonio and Charles Hood's Response to Plaintiff's Motion for Leave to File Sur-Reply [#64], and Plaintiff's Corrected Reply to Defendant's Objections [#65].

All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#7]. The undersigned

1

has authority to enter a recommendation as to Defendants' Motion for Summary Judgment pursuant to 28 U.S.C. § 636(b)(1)(B). As to the related non-dispositive motion, the undersigned has authority to enter an order pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, it is recommended that Defendant the City of San Antonio and Charles Hood's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [#50] be **DENIED**.

In making this recommendation, the undersigned will also **GRANT** Plaintiff's Motion for Leave to File Surreply to Defendant Reply [#63]. Finally, the undersigned will **DISMISS AS MOOT** Defendants' Miscellaneous Objections [#62], because the undersigned has not relied on any of the challenged evidence in issuing this report and recommendation.

## I. Procedural Background

This is an employment case brought by Plaintiff Shawn Ashley, proceeding *pro se*, arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq.* The only remaining claim in this action is Ashley's claim of unlawful disclosure of his confidential medical information in violation of Section 102(d) of the ADA as asserted against Defendants the City of San Antonio and Chief Hood in his official capacity. The undersigned's previous reports and recommendations contain a more thorough summary of the procedural and factual background of this case, but the undersigned will briefly outline the facts relevant to Ashley's unlawful disclosure claim herein.[1]

---

[1] The summary judgment record before the Court in this case is minimal and does not establish all the facts necessary to understand the context of this dispute. Accordingly, the undersigned will briefly outline the facts as established by the summary judgment evidence, but in doing so, also will reference some of the allegations contained in Ashley's Second Amended Complaint to provide a factual context for this case. The facts as alleged in Ashley's Second Amended Complaint are not referenced as evidence but only to assist the Court in understanding the factual basis of Ashley's claim.

Ashley is currently employed by the San Antonio Fire Department and holds the rank of lieutenant. (Ashley Aff. [#59] at 15–16.) Ashley's Second Amended Complaint alleges that sometime during the course of his employment, Ashley contracted the disease of cancer, allegedly due to his exposure to toxic chemicals on the job. (Second Am. Compl. [#19] at 2.) After receiving his cancer diagnosis, Ashley contends that he applied for workers' compensation benefits by contacting his supervisor Chief Hall on February 28, 2012 to complete a First Report of Injury ("FRI"). (*Id.* at 3; Ashley Aff. [#59] at 1.) According to Ashley, during his meeting with Chief Hall, Hall asked Ashley what was wrong with him, and Ashley disclosed his cancer diagnosis for purposes of the report; he also contends he expressed his desire that the diagnosis remain confidential among his supervisors and those processing the FRI: Chief Hall, Deputy Chief Horan, and Defendant Chief Hood. (Second Am. Compl. [#19] at 3; Ashley Aff. [#59] at 1.)

Ashley alleges that he returned to work the following year on March 21, 2013. (Second Am. Compl. [#19] at 4.) Over a year and a half later, in January 2015, Ashley claims that Chief Hall disclosed his medical diagnosis to Assistant Chief Jimenez, Ashley's shift commander. (*Id.* at 5.) According to Ashley, Jimenez thereafter disclosed Ashley's medical information to numerous firefighters who attended meetings aimed to address the increase of cancer within the Fire Department in recent years. (*Id.*) In support of this allegation, Ashley provides the Court with a number of affidavits from other Fire Department employees who state they were present at the meetings and witnessed the disclosure. (Dalley Aff. [#59] at 30; Gomez Aff. [#59] at 35; Newman Aff. [#59] at 38; Mikel Aff. [#59] at 41.) Ashley claims that he developed severe emotional stress—in fact, that he developed Post-Traumatic Stress Disorder (PTSD)—from the

disclosure of his cancer diagnosis, and that he requested more time off due to both his disability and emotional stress in early March 2015. (Second Am. Compl. [#19] at 7.)

Ashley filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 7, 2015, alleging that he was the victim of disability discrimination and retaliation in part due to complaints he made regarding the improper disclosure of his confidential medical information.[2] (EEOC Charge [#50-5] at 2.) He filed this lawsuit on February 2, 2017. Defendants now seek summary judgment on Ashley's remaining cause of action, arguing that he cannot establish essential elements of his prima facie case for wrongful disclosure of his confidential medical information.

## II. Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at

---

[2] Defendants argue in their motion for summary judgment that the Court lacks jurisdiction over any wrongful disclosure claim related to disclosure by Chief Hall, as Ashley only exhausted his claim of wrongful disclosure as to Jimenez. Ashley's response to this argument indicates that Ashley is not pursuing any claim based on any alleged disclosure by Chief Hall. (Resp. [#59] at 11.)

4

323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). This Court is required to construe pleadings, filings, and briefs of *pro se* litigants more liberally than documents filed by parties represented by counsel. *See Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).

### III. Analysis

The Court should deny Defendants' motion for summary judgment, which concerns Ashley's only remaining claim, his claim that Defendants violated Section 102(d) of the ADA by wrongfully disclosing Ashley's medical information. The ADA prohibits employers from discriminating against an employee on the basis of disability. 42 U.S.C. § 12112(a). Section 102(d) of the ADA defines disability discrimination to include improper examinations or

inquiries of employees regarding their medical conditions. *Id.* at § 12112(d)(1). An employer is specifically prohibited from making inquiries or conducting examinations to determine whether an employee is an individual with a disability unless the employer's examinations or inquiries are job-related and consistent with job necessities. *Id.* at § 12112(d)(4)(A). The statute clarifies that employers may inquire about whether an employee can perform job-related functions without running afoul of its prohibition on medical inquiries. *Id.* at § 12112(d)(4)(B). The employer is required to treat any information regarding the medical condition or history of an employee that the employer obtains in the course of a medical examination or inquiry authorized under Section 102(d) as a confidential medical record, subject to certain limited exceptions. *Id.* at §§ 12112(d)(3), (4)(C).

Thus, these provisions give rise to a cause of action for violating Section 102(d) of the ADA when (1) an employer engages in a permissible examination or medical inquiry; (2) the employer obtains confidential medical information from the employee in the course of doing so; (3) the employer discloses that confidential information to others without the employee's permission; and (4) the employee suffers a tangible injury as a result of the disclosure. *See Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 711 (E.D. La. 2013) (listing elements of Section 102(d) claim). "On its face, [Section] 102(d) does not apply to or protect information that is voluntarily disclosed by an employee unless it is elicited during an authorized employment-related medical examination or inquiry." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1047 (10th Cir. 2011).

Defendants argue they are entitled to summary judgment on Ashley's Section 102(d) claim for two reasons: first, because Ashley cannot establish his medical information was confidential; and second, because Ashley cannot establish that the information was disclosed

during a medical examination or pursuant to a medical inquiry covered by Section 102(d). Defendants assert that Ashley's deposition testimony establishes as a matter of law that he voluntarily disclosed his medical information to other employees of the fire department prior to Jimenez's alleged disclosure, making the information non-confidential. The undersigned disagrees. Instead, a genuine issue of material fact remains as to whether Ashley's medical information was confidential, and a factfinder could conclude that the context of Ashley's disclosure is a medical inquiry covered by Section 102(d), and therefore, that Defendant violated its duty to keep that information confidential when it disclosed it to third parties.

**A.     A fact issue remains as to whether Ashley's medical information was confidential.**

Although Defendants contend Ashley's medical information was not confidential, the evidence in the record Defendants cite in support of this argument—specifically, Ashley's deposition testimony—merely establishes that Ashley or his wife voluntarily disclosed the cancer diagnosis to six members of Ashley's family, two of whom happened to work for the San Antonio Fire Department like Ashley. (Ashley Dep. [#50-2] at 27:1–32:9.) This testimony does not establish as a matter of law that Ashley's cancer diagnosis was generally known within the Fire Department or among his supervisors such that the information could not be perceived to be confidential in his workplace.

Nor does Jimenez's testimony that he had heard about Ashley's cancer diagnosis from other people in Ashley's district establish that the information was voluntarily disclosed **by Ashley** such that it was not protected by Section 102(d). (Jimenez Statement [#50-4] at 2.) Ashley's affidavit states that he kept his medical condition confidential and, aside from his family, only disclosed his diagnosis to his supervisor so he could apply for and receive worker's compensation benefits. (Ashley Aff. [#59] at 23.) Ashley contends that if Jimenez indeed heard

7

anything about his condition from Ashley's coworkers, it was likely based on speculation, not Ashley's voluntary disclosure, because Ashley was on leave for an extended period of time; he lost significant weight during his leave due to his illness; and there were 18 firefighters battling cancer during the same time period. (*Id.*) The fact that people who worked with Ashley might have accurately inferred his diagnosis does not render Ashley's medical information non-confidential as a matter of law, as Ashley maintains that he did not voluntarily disclose his diagnosis to anyone aside from his supervisors and family.

Finally, the fact that Ashley may have discussed his diagnosis with Chief Hall and his other supervisors for purposes related to his FRI, such as addressing how he could use his leave to attend treatments in a Houston hospital,[3] does not alter the undersigned's conclusion. The regulations implementing Section 102(d) specifically provide that informing supervisors and managers regarding necessary accommodations does not render medical information non-confidential. *See* 29 C.F.R. § 1630.14(d)(4)(i)(A). Accordingly, a fact issue remains as to the confidentiality of Ashley's medical information.

B. **Defendants have not established as a matter of law that disclosure in the context of a First Report of Injury falls outside of Section 102(d)'s protections.**

As to the context in which Ashley's medical information was disclosed, the record does not establish as a matter of law that Ashley's disclosure was not covered by Section 102(d), i.e., that it was not made pursuant to an ADA-authorized medical examination or inquiry. Ashley maintains that he first disclosed his cancer diagnosis to Chief Hall during a meeting regarding the completion of his February 28, 2012 FRI. (Second Am. Compl. [#19] at 3.) In his sworn affidavit, Ashley states that during that meeting Chief Hall asked Ashley about his medical condition as necessary information for completing the FRI. (Ashley Aff. [#59] at 15.)

---

[3] *See* Horan Statement [#50-1] at 1.

Defendants contend that an FRI, which is a State of Texas insurance form for filing a worker's compensation claim, is not a medical inquiry for purposes of Section 102(d). Defendant's argument misses the mark.

Section 102(d) covers medical examinations and inquiries. 42 U.S.C. § 12112(d)(1). As was explained above, medical examinations and inquiries are generally impermissible unless they are "job-related and consistent with business necessity." *Id.* at § 12112(d)(4)(A). Employer inquiries that concern "the ability of an employee to perform job-related functions" are explicitly allowed. *Id.* at § 12112(d)(4)(B). The Fifth Circuit has not addressed the scope of what constitutes such an inquiry. However, the D.C. Circuit has opined on the issue, holding that a form submitted for leave under the Family and Medical Leave Act ("FMLA") was "clearly a response to an employer inquiry . . . into the ability of an employee to perform job-related functions." *Doe v. U.S. Postal Serv.*, 317 F.3d 339, 344 (D.C. Cir. 2003) (citing 42 U.S.C. § 12112(d)(4)(B)). The *Doe* Court found support for this conclusion in the fact that the FMLA certification form requires healthcare providers to attest to a serious health condition that has resulted in the inability to work. *Id.* At least one district court has similarly reasoned that medical information provided in support of a request for leave is protected from disclosure by Section 102(d). *See Fisher v. Harvey*, No. 1:05–CV–102, 2006 WL 2370207, at *5 (E.D. Tenn. Aug. 14, 2006) (employer's request for doctor's notes in conjunction with employee's leave application could constitute an inquiry into employee's ability to perform job-related functions).

According to the Texas Department of Insurance's website, an employer is required to file an FRI on behalf of a requesting employee to initiate a worker's compensation claim. *See* DWC FORM-001, *available at* http://www.tdi.texas.gov/forms/dwc/dwc001rpt.pdf (last visited

August 16, 2018).[4]  This form requires the employer to collect "details of the claimant's employment and circumstances surrounding the injury or illness" and specifically asks for a detailed description of "(1) the events leading up to the injury/illness, (2) the actual injury . . . , and (3) the reason(s) why accident/injury occurred." *Id.*  The form also requires the employer to disclose an employee's anticipated return-to-work date. *Id*.

The reasoning underlying the decisions in *Doe* and *Fisher* applies with equal force in the context of completing an FRI form. Although the FRI form itself does not expressly require an employer to analyze an employee's ability to perform his or her job-related functions, in order to provide the information the form requires, an employer completing the form would be required to inquire about the employee's ability to perform his or her job. In other words, like the FMLA certification form in *Doe*, the FRI form itself is not the covered inquiry; instead, the employer inquiries that would occur in order to complete the FRI form are themselves the covered inquires.

If the Court were to decline Section 102(d)'s protections in the context of an employee providing information to an employer to enable the employer to complete the paperwork necessary for an employee to apply for worker's compensation benefits, employees would be forced between foregoing their entitlement to such compensation in order to avoid being publicly identified as having a disability. As the *Doe* court recognized in the context of an employee applying for leave benefits, that would "return[] employees to the very bind Congress sought to avoid by enacting the confidentiality requirement." *See Doe*, 317 F.3d at 442.

---

[4] This Court is permitted to take judicial notice of information on official governmental websites pursuant to Federal Rule of Evidence 201. *See Swindol v. Aurora Flight Sci. Corp.*, 805 F.3d 516, 518–19 & n.2 (5th Cir. 2015); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).

The evidence and authority Defendants submit in support of their motion does not persuade the undersigned otherwise. The only case Defendants cite in support of their position is a district court case from outside this Circuit in which the Court held that the disclosure of an employee's bipolar disorder for purposes of a request for time off was not covered by Section 102(d). *See Ross v. Advance Am. Cash Advance Centers, Inc.*, 605 F. Supp. 2d 1025, 1033 (E.D. Ark. 2009) (granting summary judgment to employer on ADA retaliation claim based on complaints of disclosure of medical information because disclosure was not in context of covered medical examination). In *Ross*, the Court stated that "[i]t is an ordinary, everyday occurrence in the workplace for an employee to request time off due to a medical condition, and for the employer's supervisor to disclose to other employees the reason for that employee's absence." *Id.* In accordance with the undersigned's analysis above, the undersigned respectfully disagrees with the *Ross* court's analysis as it is neither supported by the statute's text nor the policy considerations underlying the enactment of Section 102(d).

Moreover, the conclusory statements contained in Chief Horan's affidavit that an FRI is "not a medical inquiry" are insufficient evidence to entitle Defendants to summary judgment. (Horan Aff. [#50-1] at 2.) *See Lechuga v. So. Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992) (conclusory statements in affidavits are not competent summary judgment evidence). Nor is this Court bound by Horan's conclusions of law. *See Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (legal conclusions contained in affidavit are not competent summary judgment evidence).

In summary, Defendants have not established that they are entitled to summary judgment as a matter of law as to Ashley's Section 102(d) claim, and the Court should deny their motion.

## IV.  Conclusion and Recommendation

Having considered Defendants' motion, the response and replies thereto, as well as the evidentiary record submitted to the Court, the undersigned recommends that Defendant the City of San Antonio and Charles Hood's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [#50] be **DENIED**.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File Surreply to Defendant Reply [#63] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant the City of San Antonio and Charles Hood's Objections to Plaintiff's Motion for Summary Judgment Response Evidence [#62] are **DISMISSED AS MOOT**.

## V.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52

(1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 22nd day of August, 2018.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE