UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
NOV 14 2018
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

SHAWN ASHLEY,   )
                )
    *Plaintiff*, )
                )
v.              )  Civil No. 5:17-CV-076-OLG
                )
CITY OF SAN ANTONIO and CHARLES H. )
HOOD, in his official capacity as Chief of )
the San Antonio Fire Department, )
                )
    *Defendants*. )

### ORDER

This case is before the Court on Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (docket no. 50) (the "Motion").[1] Pursuant to a referral under 28 U.S.C. § 636, United States Magistrate Judge Elizabeth S. Chestney has recommended that Defendants' Motion for Summary Judgment be denied. *See* docket no. 67 (the "R & R"). Defendants filed objections to Judge Chestney's R & R (*see* docket no. 73) and Plaintiff, who is presently proceeding *pro se*, filed a response to Defendants' objections (*see* docket no. 75).

When a party objects to a magistrate judge's recommendation, the Court must make a *de novo* determination of those portions of the recommendation to which objection is made. *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 646 (5th Cir. 1994); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court has conducted an independent review of the entire record and the applicable law, and a *de novo* review of the matters raised by Defendants' objections.

---

[1] This Order also considers Defendants' Motion to Strike filed as docket no. 74. For the reasons set forth in Section II of the Order, the Court requires more information from Plaintiff before it can resolve Defendants' Motion to Strike.

For the reasons set forth below, the Court finds that Magistrate Judge Chestney's recommendation (docket no. 67) should be **ADOPTED**, and Defendants' Motion for Summary Judgment (docket no. 50) should be **DENIED**. The Court will also briefly address Defendants' Motion to Strike and the status of the action, in light of its determination regarding Defendants' Motion for Summary Judgment.

## I. Defendants' Motion for Summary Judgment

The Court will first provide a very condensed description of the factual and procedural background.[2] Plaintiff Shawn Ashley ("Plaintiff" or "Ashley") is employed as a lieutenant with the San Antonio Fire Department (the "SAFD"). The Second Amended Complaint alleges that Plaintiff contracted cancer through his exposure to toxic chemicals on the job, and Plaintiff contacted his supervisor, Chief Connie Hall ("Hall") to begin the process of applying for worker's compensation. According to Plaintiff, Hall asked Plaintiff questions about his condition in order to fill out a "First Report of Injury" form ("FRI") for his worker's compensation claim, and Plaintiff revealed his cancer diagnosis. It appears that Hall disclosed Plaintiff's condition with Chief Noel Horan ("Horan") and Chief Charles Hood ("Hood") as part of processing Plaintiff's FRI and worker's compensation claim. It also appears that Chief Matias Jimenez ("Jimenez")—Plaintiff's shift commander—was informed by Hall of Plaintiff's condition on a "need to know basis." In early 2015, during presentations to firefighters conducted as part of SAFD's Cancer Initiative, the record indicates that Jimenez disclosed Plaintiff's condition as Jimenez was presenting examples of how firefighters should go about filing medical reports if they have been exposed to health hazards. Plaintiff alleges that he developed severe emotional distress as a result of Jimenez's disclosure of his cancer diagnosis to other SAFD firefighters.

---

[2] The Court assumes the parties are familiar with the factual and procedural posture of the case, and a more detailed description is included in Judge Chestney's R & R. *See* docket no. 67.

Plaintiff's original and amended complaints alleged numerous claims against the SAFD and various department officials. *See* docket nos. 1 & 19. However, the only remaining claim in this action is Plaintiff's claim for unlawful disclosure of his confidential medical information in violation of Section 102(d) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, *et seq.*, as asserted against Defendants the City of San Antonio and Fire Chief Charles Hood, in his official capacity. The claim relates only to Jimenez's disclosure (as opposed to any disclosure by Hall, Horan or Hood), as Plaintiff exhausted his administrative remedies only with respect to that theory of "disclosure." *See* docket no. 59 p. 11; docket no. 67 p. 4 n.7; docket no. 50-5. Defendants moved for summary judgment on Plaintiff's remaining claim, *see* docket no. 50, and on August 22, 2018, Judge Chestney issued a recommendation that Defendants' Motion be denied. *See* docket no. 67.

Defendants' objections to the R & R largely restate two arguments that were raised in the briefing on the Motion for Summary Judgment. First, Defendants assert that Plaintiff's cancer diagnosis was not "confidential information" under the ADA because other firefighters in Plaintiff's district knew about Plaintiff's condition. Specifically, the evidence indicates that Plaintiff's two brothers-in-law, who also work at SAFD, were aware of Plaintiff's condition because they had been told by Plaintiff's wife. *See* docket no. 73 pp. 4-7.

The present record, including the deposition testimony cited by Defendants, does not establish that Plaintiff's cancer diagnosis was generally known within the SAFD. Defendants note that the record indicates that Plaintiff or Plaintiff's wife voluntarily told her brothers about Plaintiff's diagnosis. *See* docket no. 50 p. 7. However, it appears that the disclosures to Plaintiff's brothers-in-law were made in the context of asking for help with child care while Plaintiff received treatment, *see* docket no. 59 pp. 47, 50, and the fact that Plaintiff's brothers-in-law are also employed by SAFD did not—as a matter of law—make Plaintiff's diagnosis

generally known or "non-confidential" at the department. Importantly, Defendants do not cite case law for the proposition that once a co-worker knows about a plaintiff's medical condition, that necessarily means—as a matter of law—that the information is non-confidential with respect to all other workplace settings.

Moreover, although Defendants assert that Jimenez "heard of Ashley's cancer diagnosis from various people throughout Ashley's district," docket no. 50 p. 7, the record does not make clear (i) which other employees Jimenez had heard the information from, or (ii) how those other employees had learned of it themselves. Specifically, the record *does not clearly indicate* that Jimenez (or the other employees) knew of Plaintiff's condition because Plaintiff voluntarily disclosed that information. *See* docket no. 59 p. 23 (Plaintiff's sworn affidavit asserts that he "kept [his] medical condition confidential and [he] only disclosed to [his] supervisor . . . so I could receive workers compensation"); *see id.* at p. 41 (sworn affidavit of Plaintiff's co-worker states that it was via Jimenez's disclosure that he learned of Plaintiff's diagnosis); *id.* at pp. 47, 50 (Plaintiff's brothers-in-laws' sworn affidavits state that Plaintiff's brothers-in-law did not tell anyone else about Plaintiff's diagnosis after learning about it in the context of assisting Plaintiff's family with child care). Moreover, Plaintiff believes that his co-workers may have *speculated* that he was ill based on circumstantial evidence, such as Plaintiff's loss of weight. *See id.* at p. 23. Plaintiff's sworn statement indicates that "nobody really knew" about the diagnosis, *see id.*, and in any event, even if the speculation of other members of the department was ultimately confirmed to be correct, that does not mean that Plaintiff's diagnosis was "non-confidential" at the time of the alleged wrongful disclosure. In sum, at the present stage, the Court cannot conclude—as a matter of law—that Plaintiff's medical condition was "non-confidential" under § 102(d). Thus, Defendants' objections are overruled on this issue.

Second, Defendants contend that Plaintiff's disclosure of his cancer diagnosis to Hall was not part of a covered "medical inquiry" under § 102, and thus, Defendants were not required to keep such information confidential. *See* docket no. 73 pp. 8-10. Instead, Defendants argue that Plaintiff's decision to inform Hall of his illness was a "voluntary disclosure" that is not covered by the ADA's confidentiality provisions. *See id.* at p. 9.

The record indicates that Plaintiff disclosed his medical condition to Hall as part of the process that was necessary for completing Plaintiff's FRI for worker's compensation. *See* docket no. 59 p. 15. Defendants assert that an FRI does not require an analysis of an "employee's ability to perform his or her job-related functions," and thus, questions related to an FRI do not constitute "medical inquiries" under §102(d).[3] *See* docket no. 73 p. 9. However, upon review of the relevant law, the Court does not believe the scope of § 102(d)'s scope is as narrow as Defendants assert. Notably, at least one court has held that inquiries related to a FMLA certification that requires an employer to attest to an employee's serious health condition may constitute "medical inquiries" under § 102(d). *See Doe v. U.S. Postal Serv.*, 317 F.3d 339, 344 (D.C. Cir. 2003). Additionally, another district court has declined to dismiss a § 102(d) claim after an employer collected medical information from a plaintiff so that his worker's compensation claim could be processed. *See Shoun v. Best Formed Plastics, Inc.*, 28 F. Supp. 3d 786, 791 (S.D. Ind. 2014) (noting that employer "gathered medical information from [plaintiff] and monitored his medical treatment . . . in connection with his worker's compensation claim . . .

---

[3] This Court is unpersuaded by Defendants' affidavit testimony summarily asserting that FRI's do not involve "medical inquiries" under the ADA. *See* docket no. 50-1 p. 2 (asserting that "[t]he FRI is not a medical inquiry made by the city"); *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (legal conclusions contained from a defendant's affidavit may not be considered as summary judgment evidence).

[and] [u]nder the statute's plain language, [the] medical information gathered . . . in that context was required to be treated as a 'confidential medical record'" under § 102(d)(4)).[4]

Here, the Texas Department of Insurance mandates that an FRI must be filed in order to initiate a worker's compensation claim, and the form requires the employer to disclose "the actual injury." *See* DWC FORM-001, *available at* http://www.tdi.texas.gov/forms/dwc/dwc001rpt.pdf (last visited Nov. 9, 2018). Thus, Plaintiff may have been required to disclose his diagnosis in order to request worker's compensation, and the Court does not believe that Congress intended for Plaintiff to have to choose whether he would forego his eligibility for worker's compensation or forego the confidentiality protections of the ADA. *See Doe*, 317 F.3d at 342 (noting in the FMLA context that a contrary interpretation would "return[] employees to the very bind Congress sought to avoid by enacting the confidentiality requirement"). Thus, the Court cannot conclude—as a matter of law—that Plaintiff's disclosure of his diagnosis to Hall was not made in response to a "medical inquiry," and therefore, Defendants' objections are also overruled on this point.

Accordingly, after conducting a *de novo* review of the portions of the R & R to which Defendants' objected,[5] the Court determines that Judge Chestney's recommendations should be adopted in full and Defendants' Motion for Summary Judgment should be denied.

## II. Defendants' Motion to Strike

Plaintiff filed a "Designation of Witnesses" on September 10, 2018, *see* docket no. 71, and Defendants note that Plaintiff's new list of witnesses (i) contains one witness who was not

---

[4] The Court recognizes that this case and the *Shoun* case have slightly different factual backgrounds and procedural postures.

[5] The Court has also conducted a "clear error" review of the portions of the R & R for which there are no objections. *See United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (noting that, for the portions of an R & R for which there are no objections, the Court need only confirm that such findings and conclusions are not clearly erroneous or contrary to law).

disclosed on Plaintiff's prior witness designation list, and (ii) was filed several months after the close of discovery. *See* docket no. 74. The record indicates that Plaintiff's new witness is Dr. Darrel Parisher ("Dr. Parisher"), a retired psychologist who was employed by the SAFD during the relevant period. *See id.* The record does not make clear as to whether Plaintiff intends for Dr. Parisher to provide fact or expert testimony, however, Defendants move to strike Plaintiff's disclosure (and Dr. Parisher's inclusion as a witness) regardless of the capacity in which he is prepared to offer testimony. *See* docket no. 74. Defendants accurately note that they have not been provided an opportunity to depose Dr. Parisher, nor—if he is providing expert testimony—have they been afforded an opportunity to designate a rebuttal expert. *See id.*

In light of the fact that Plaintiff is proceeding *pro se*, the Court believes it is necessary to request additional information regarding Dr. Parisher's testimony before ruling on Defendants' Motion to Strike. Following consultation with his appointed trial counsel (which is described in more detail in Section III, *infra*), Plaintiff shall notify the Court via filing (i) of the reason that Plaintiff requires the testimony of Dr. Parisher, (ii) the subject matter on which Dr. Parisher is expected to testify, and (iii) whether the testimony is intended to be that of a fact witness or expert witness. Upon receipt of such filing by Plaintiff (and any response by Defendants), the Court will determine whether Plaintiff should be allowed to rely on Dr. Parisher as a witness, and if so, the extent to which *limited* fact or expert discovery must be reopened in order to avoid prejudice to Defendants.[6]

---

[6] Plaintiff should also notify the Court if there are any other new (*i.e.*, non-disclosed) witnesses that Plaintiff believes are *absolutely necessary* in order to conduct a trial on the merits. To be clear, any request for supplemental disclosure of witnesses or *limited* additional discovery must be substantiated and supported, and Plaintiff will not be afforded the opportunity to re-conduct all prior phases of the litigation now that he has counsel. In the event the parties reach agreement as to the scope of any such supplemental testimony or limited discovery following the appointment of counsel, they should notify the Court.

### III. Appointment of Counsel

In order for the case to proceed in an efficient fashion at trial and in the weeks leading up to trial, the Court believes it is appropriate for Plaintiff to be appointed trial counsel at this stage. *See Salmon v. Corpus Christi Indep. Sch. Dist.*, 911 F.2d 1165, 1166 (5th Cir. 1990) ("[I]n a civil case a federal court has considerable discretion in determining whether to appoint counsel."). For that reason, the matter will be referred to Magistrate Judge Chestney for appointment of trial counsel.

### IV. Trial Setting

In light of (i) the denial of Defendants' Motion for Summary Judgment, (ii) the outstanding issues regarding Plaintiff's witnesses and whether limited discovery should be reopened prior to trial, and (iii) the forthcoming appointment of trial counsel for Plaintiff, the Court believes it would be inappropriate to proceed to trial as scheduled on December 10, 2018. For that reason, the settings for trial and the pre-trial conference will be vacated, and a new trial setting will be issued once counsel has been appointed and the Court has been provided with the information set forth in Section II of this Order.

### V. Mediation

The parties have previously engaged in mediation, and it is the Court's understanding that mediation did not result in settlement on that occasion. *See* docket no. 56. In light of the Court's denial of Defendants' Motion for Summary Judgment and the forthcoming appointment of counsel for Plaintiff, the Court will provide the parties with an additional opportunity for mediation if the parties believe a second mediation may be productive and appropriate before proceeding to trial. In the event the parties wish to conduct a second mediation prior to proceeding to trial, they should notify the Court.

## CONCLUSION AND ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1) Magistrate Judge Chestney's recommendation (docket no. 67) is **ADOPTED**, and Defendant's Motion for Summary Judgment (docket no. 50) is **DENIED**.

2) The matter is **REFERRED** to Magistrate Judge Chestney for appointment of Plaintiff's trial counsel.

3) Within <u>fourteen (14) days</u> of the appointment of trial counsel, Plaintiff shall notify the Court via filing (i) of the reason that Plaintiff requires the testimony of Dr. Parisher,[7] (ii) of the subject matter on which Dr. Parisher is expected to testify, and (iii) whether the testimony is intended to be that of a fact witness or expert witness. Within <u>seven (7) days</u> of Plaintiff's filing, Defendant may file a response, if appropriate. Following receipt of such briefing, the Court will resolve the merits of Defendants' Motion to Strike and determine whether *limited* pre-trial discovery should occur.

4) This action's December 5, 2018 pre-trial conference and December 10, 2018 trial setting are hereby **VACATED**, and a new trial setting will be issued at a later date.

It is so **ORDERED**.

SIGNED this ____ day of November, 2018.

ORLANDO L. GARCIA
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] Following consultation with trial counsel, Plaintiff should also notify the Court if there are any other new witnesses that Plaintiff believes are *absolutely necessary* in order to conduct a trial on the merits. *See* note 6, *supra*.